No. 19-40834

# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CRISTIAN MENDOZA,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Texas
Sherman Division, No. 4:18-cr-46 (16)

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

JOSEPH D. BROWN
  United States Attorney
  Eastern District of Texas

BRADLEY VISOSKY
  Assistant United States Attorney
  101 E. Park Blvd., Suite 500
  Plano, Texas 75074
  (972) 509-1201

ATTORNEYS FOR THE UNITED STATES

**Statement Regarding Oral Argument**

The United States submits that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record Fed. R. App. P. 34(a)(2)(C).

# Table of Contents

**Page(s)**

Statement Regarding Oral Argument ....................................................i

Table of Contents ...........................................................................ii

Table of Authorities ...................................................................... iii

Statement of Jurisdiction ................................................................ 1

Statement of the Case ................................................................... 1

Statement of the Issue ................................................................... 1

Summary of Argument .................................................................. 7

Argument ..................................................................................... 9

    Issue I:  Whether Mendoza has satisfied his heavy burden of showing, on plain-error review, that his guilty plea was involuntary? .............................................................................. 9

    Issue II:  Whether this Court should consider Mendoza's claim that his trial counsel was ineffective when he did not raise that claim in the district court? ......................................................... 14

Conclusion.................................................................................. 18

Certificate of Service.................................................................... 18

Certificate of Compliance ............................................................ 19

Certificate Related to 5th Cir. R. 25.2............................................ 19

# Table of Authorities

**Federal Cases**                                        **Page(s)**

*Massaro v. United States,*
    538 U.S. 500 (2003) ........................................................................ 14

*Strickland v. Washington,*
    466 U.S. 668 (1984) ........................................................................ 17

*United Sates v. Cothran,*
    302 F.3d 279 (5th Cir. 2002) ........................................................... 9

*United States v. Andaverde-Tinoco,*
    741 F.3d 509 (5th Cir. 2013) ......................................................... 14

*United States v. Booker,*
    543 U.S. 220 (2005) ........................................................................ 13

*United States v. Brown,*
    328 F.3d 787 (5th Cir.2003) ............................................................ 9

*United States v. Flores,*
    739 F.3d 337 (7th Cir. 2014) ......................................................... 15

*United States v. Johnson,*
    850 F.3d 515 (2d Cir. 2017) ..................................................... 12, 13

*United States v. London,*
    568 F.3d 553 (5th Cir. 2009) ......................................................... 14

*United States v. Salazar-Alanis,*
    747 F. App'x 982 (5th Cir. 2019) .................................................. 10

*United States v. Salinas,*
  480 F.3d 750 (5th Cir. 2007) ............................................................. 9

*United States v. Smallwood,*
  920 F.2d 1231 (5th Cir. 1991) ......................................................... 10

*United States v. White,*
  111 F. App'x 274 (5th Cir. 2004) ...................................................... 9

**Federal Statutes and Rules**

18 U.S.C. § 924(c) ...................................................................... 1, 13

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 3742(a) ........................................................................ 1

21 U.S.C. § 841(b)(1)(A) .............................................................. 12, 13

21 U.S.C. § 846 ............................................................................. 1

21 U.S.C. § 851 ............................................................................ 12

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 2255 .......................................................................... 14

Fed. R. App. P. 32(a)(5) ................................................................ 19

Fed. R. App. P. 32(a)(6) ................................................................ 19

Fed. R. App. P. 32(a)(7)(B) ............................................................ 19

Fed. R. App. P. 32(a)(7)(B)iii ......................................................... 19

Fed. R. App. P. 34(a)(2)(C)................................................................i

U.S.S.G. Ch. 5, Part A, cmt. n.2 .......................................................5

U.S.S.G. § 2D1.1 ...............................................................................2

U.S.S.G. § 2D1.1(b)(1)................................................................ 4, 11

U.S.S.G. § 2D1.1(b)(5)................................................................ 4, 11

U.S.S.G. § 2D1.1(b)(12).................................................... 2, 4, 10, 11

U.S.S.G. § 3B1.2...............................................................................2

U.S.S.G. § 3E1.1.......................................................................2, 4, 11

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES[1]

Issue I:      Whether Mendoza has satisfied his heavy burden of showing, on plain-error review, that his guilty plea was involuntary.

Issue II:      Whether this Court should consider Mendoza's claim that his trial counsel was ineffective when he did not raise that claim in the district court.

## STATEMENT OF THE CASE

A grand jury charged Mendoza with conspiring to possess with the intent to distribute methamphetamine (count one) and heroin (count two), in violation of 21 U.S.C. § 846, and with possession of a firearm in furtherance of a drug-trafficking crime (count three), in violation of 18 U.S.C. § 924(c). ROA.125-30. Mendoza entered into a

---

[1] There is no need for either the government or the Court to address Mendoza's third or fourth issues — whether Mendoza "voluntarily and knowingly waived his right to appeal" (Mendoza Issue 3) or whether the appellate waiver in his plea agreement fails for lack of consideration (Mendoza Issue 4) — for the voluntariness of the plea is addressed in Mendoza Issue 2, and the appellate waiver does not come into play because Mendoza raises a claim of ineffective assistance (Mendoza Issue 1) that is excepted from the waiver. The rest of Mendoza's claims deal with the validity of the plea itself.

written plea agreement with the government in which he agreed to plead guilty to the methamphetamine-conspiracy offense (count one) in exchange for the dismissal of the other counts. ROA.430, 435.

The agreement included the following guideline stipulations:

- that the drug quantity involved in the conspiracy for which Mendoza would be held responsible was at least 45 kilograms of methamphetamine or 4.5 kilograms of actual methamphetamine, resulting in a base offense level of 38 under U.S.S.G. § 2D1.1;

- that a three-level reduction for acceptance of responsibility would apply under U.S.S.G. § 3E1.1 if the probation office recommended it but that this stipulation would become void if Mendoza later acted in a way that was inconsistent with his acceptance of responsibility (Mendoza further agreed that to be entitled to credit for acceptance of responsibility he "shall not violate any other state or federal law");

- that Mendoza did not qualify for a mitigating-role reduction under U.S.S.G. § 3B1.2; and

- that Mendoza did qualify for a two-level increase under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

ROA.431-33. The plea agreement further provided that the parties understood that the district court was not bound by their stipulations; "that other specific offense characteristics or guideline adjustments may increase or decrease the appropriate sentencing range"; and that "[n]othing in this agreement will preclude argument by either party

regarding any other specific offense characteristic or guideline adjustment." ROA.432.

Mendoza made the usual affirmations at his change-of-plea hearing: that he was competent to enter a plea; that he was fully satisfied with his attorney's advice; that he understood the elements of the drug-conspiracy offense he was charged with; that he understood the full range of penalties resulting from his plea; that the district court would "look to" but was "not obligated" to follow the sentencing guidelines; that his guidelines range could not be determined until the completion of the PSR; that he had voluntarily agreed to all of the terms in his plea agreement and understood that the district court was not bound by them; and that he had waived his ability to appeal his conviction or sentence but had reserved the right to (1) raise a claim of ineffective assistance of counsel and (2) challenge any punishment that exceeded the statutory maximum. ROA.132-64. The district court accepted Mendoza's plea of guilty to count one. ROA.67-70, 76-77.

In the factual basis accompanying his plea, Mendoza originally stipulated, among other things, that his role in the conspiracy was to supply co-conspirators with kilogram quantities of methamphetamine imported from Mexico; that he was a leader/organizer of the criminal activity; that he possessed firearms at the time of the offense; and

that he maintained a premises for the purpose of manufacturing or distributing methamphetamine. ROA.64-65. The parties, however, later agreed to strike out Mendoza's admissions regarding his role as a leader/organizer and his possession of firearms. ROA.65, 155-158.

The probation officer prepared a PSR that followed the terms of the parties' plea agreement. The officer began with a base offense level of 38, added two levels under U.S.S.G. § 2D1.1(b)(12) for Mendoza's maintenance of a drug premises, and applied a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. ROA.450-51. The officer further applied a two-level increase under U.S.S.G. § 2D1.1(b)(5), based on Mendoza's admission in his factual basis that the methamphetamine involved in the conspiracy was imported from Mexico, ROA.450; and a two-level increase under U.S.S.G. § 2D1.1(b)(1), based on the officer's finding that a dangerous weapon (a loaded Ruger P95DC semi-automatic pistol) was found in a search of the stash house maintained by Mendoza. ROA.450. These adjustments brought Mendoza's total offense level to 41. ROA.451. The probation officer scored Mendoza's criminal history category as III. ROA.453. Combined, these values produced an advisory guidelines range of 360 months to life imprisonment. ROA.459. The probation officer recommended a 360-month sentence. ROA.459.

After the initial PSR was prepared but before sentencing, officials at the Bowie County jail where Mendoza was confined found a cell phone in Mendoza's bunk. ROA.275, 529. He was charged with a disciplinary incident for having serious contraband. ROA.529. The probation officer concluded that "[b]y continuing to engage in criminal activity while pending sentencing," Mendoza "acted in a manner that is inconsistent with acceptance of responsibility," so Mendoza's credit for acceptance of responsibility was taken away. ROA.529. This brought Mendoza's total offense level to 43,[2] which, when combined with his criminal history category of III, resulted in an advisory guidelines range of life imprisonment. ROA.535.

Both parties filed various objections to the PSR. The government objected because it thought that the probation officer should have found that Mendoza was a leader or organizer of the criminal enterprise. ROA.538-39. Mendoza disagreed with the two-level enhancement for possession of a dangerous weapon and the assessment of various criminal history points. ROA.539-41.

The district court took up the objections at sentencing. After receiving evidence, the court sustained the government's objection, finding that a three-level adjustment should apply based on

---

[2] Mendoza's adjusted offense level was actually 44, but under the guidelines "[a]n offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. Ch. 5, Part A, cmt. n.2; ROA.529.

Mendoza's leadership role. ROA.293. The court overruled Mendoza's objection to the two-level weapon enhancement but took away one criminal history point. ROA.176-77, 284. These rulings made no difference to the applicable guidelines range of life imprisonment. ROA.299.

At sentencing the government also presented evidence relating to Mendoza's loss of credit for acceptance of responsibility. Both an ICE agent and a lieutenant at the Bowie County jail, where Mendoza was confined while awaiting sentencing, testified that a cell phone was found in Mendoza's bunk, stuffed between the mattress and the sheets. ROA.230-32, 274-82. Mendoza was lying on top of the bed at the time, with the phone underneath him. ROA.274-76. There was testimony that Mendoza had been charged criminally for his possession of the phone. ROA.230. Mendoza's attorney, Christopher Mulder, actively cross-examined the government's witnesses who testified about the cell-phone incident. ROA.232-33, 277-82. For example, Mulder drew out that there were 23 inmates housed in Mendoza's unit; that four phones were found in total; that Mendoza had denied that the phone found under his bunk was his; that Mendoza was not the one who had posted pictures to Facebook; and that video surveillance had captured the inmates getting out of their

bunks at the time of the search but that the government did not have a copy of the video. ROA.277-282.

In his closing argument at sentencing, Mulder said that "taking away [Mendoza's] acceptance of responsibility [] is understandable, *if* you believe that the cell phone found in his tank belonged to him at the Bowie County jail." ROA.296 (emphasis added). Mulder also made a strong push for a downward variance from the advisory guidelines sentence of life imprisonment. ROA.295-298. He argued for a 20- to 30-year sentence because Mendoza was only 23 years old and had a family and because a life sentence would be disproportionate to his conduct and the sentences co-defendants had received. ROA.296-97. The district court accepted Mulder's arguments in part. The court declined to impose a 20-30 year sentence but varied downward from the guidelines sentence of life to 35 years (420 months) "due in part to [Mendoza's] age, and concern of the disparity of sentence with the other defendants." ROA.302.

## SUMMARY OF ARGUMENT

Issue I: Mendoza contends for the first time on appeal that his guilty plea was entered involuntarily because his plea agreement and factual basis "established" that his advisory, non-binding, guidelines sentencing range would be set at life imprisonment. Far from it. The stipulations in the plea agreement and factual basis simply set a

baseline for Mendoza's offense level that was far below life. At the time Mendoza entered his plea, the total offense level and criminal history category had yet to be determined by the probation office. And in fact the probation office initially recommended a 360-month sentence, short of life. But then Mendoza was caught with a cell phone in jail, so he lost credit for acceptance of responsibility, resulting in an advisory guidelines range of life. The guidelines range was of course not binding on the district court, and the district court imposed a sentence of 420 months. Mendoza has failed to demonstrate, on plain-error review, that his plea was involuntary.

Issue II: Mendoza contends that his trial counsel was ineffective by failing to object to his loss of acceptance of responsibility because he possessed a cell phone in jail. He did not raise the claim in the district court, and he can raise it on collateral review, so this Court should not review it now. But if it does, the Court should reject the claim on plain-error review because Mendoza's trial attorney made all of the arguments Mendoza's appellate attorney says he should have made, but the district court denied giving Mendoza acceptance credit anyway based on the evidence of Mendoza's possession of the phone.

**ARGUMENT**

**Issue I: Mendoza has failed to meet his high burden on plain-error review to show that his guilty plea was entered involuntarily (Responsive to Mendoza Issue 2).**

**Standard of Review**

Because Mendoza did not move to withdraw his guilty plea in the district court and made no objections concerning his plea, this Court's review of the voluntariness of his plea is for plain error. *See United States v. White*, 111 F. App'x 274, 275 (5th Cir. 2004) (citing *United States v. Brown*, 328 F.3d 787, 788 (5th Cir. 2003) and *United Sates v. Cothran*, 302 F.3d 279, 283 (5th Cir. 2002)). Mendoza "must show that (1) there is an error, (2) the error is clear or obvious, and (3) the error affects his substantial rights." *United States v. Salinas*, 480 F.3d 750, 756 (5th Cir. 2007) (quotation marks and citation omitted). The Court can only grant relief if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

**Discussion**

Mendoza claims for the first time that his guilty plea was not knowing and voluntary. Mendoza says that "he stipulated to facts that essentially guaranteed that his advisory sentencing range would be life in prison, irrespective of whether he was granted an

9

acceptance of responsibility reduction." Mendoza Br. 3.[3] This simply
isn't true. Under the plea agreement, the parties agreed that the
following would apply: a base offense level of 38, a two-level increase
under U.S.S.G. § 2D1.1(b)(12), and a three-level reduction for
acceptance of responsibility. Mendoza's admission in his factual basis
that the methamphetamine involved in the conspiracy was imported
from Mexico, ROA.450, further meant that Mendoza could expect
another two-level increase. All told, then, at the time Mendoza
entered his plea, the lowest total offense level Mendoza could receive
based on his stipulations was 39 (base 38 + 2 (premises) + 2
(importation from Mexico) − 3 (acceptance of responsibility)). And
Mendoza makes no claim that his criminal history category was fixed
at the time. So at the time he entered his plea, Mendoza's advisory
guidelines sentencing range, based on the admissions he made in the
plea agreement and factual basis, could have been as low as 262-327

---

[3] As discussed above, there is no need to address Mendoza's fourth issue —
that his appellate waiver does not apply because his plea agreement was not
supported by consideration — because the appellate waiver does not come into
play in this appeal. And anyway any claim that Mendoza's plea agreement was
"not supported by consideration" essentially mirrors Mendoza's claim that his
guilty plea was not knowing and voluntary — both claims are premised on
Mendoza's idea that he did not receive a benefit from his plea. Legally speaking,
this Court has "never expressly held that consideration is necessary to support a
valid plea bargain." *United States v. Salazar-Alanis*, 747 F. App'x 982, 983 (5th
Cir. 2019) (citing *United States v. Smallwood*, 920 F.2d 1231, 1239-40 (5th Cir.
1991)). So there was no "clear or obvious error in the district court's acceptance of
the plea agreement[.]" *Id.*

months (offense level 39, criminal history category I). It was not inexorably set as life.

The initial PSR prepared by the probation office proves the point. Following the parties' plea agreement and the admissions Mendoza made in his factual basis, the probation officer applied a base offense level of 38; a two-level increase under U.S.S.G. § 2D1.1(b)(12) (premises); a two-level increase under U.S.S.G. § 2D1.1(b)(5) (importation); and a three-level reduction under U.S.S.G. § 3E1.1 (acceptance of responsibility). ROA.450-51. The probation officer further determined that a two-level increase under U.S.S.G. § 2D1.1(b)(1) was warranted because a loaded semi-automatic pistol was found in the stash house Mendoza maintained. ROA.450. These adjustments brought the total offense level to 41, which when combined with Mendoza's criminal history category score of III, yielded an advisory guidelines range of 360 months to life imprisonment. ROA.459. The probation officer recommended a 360-month sentence. ROA.459.

Had Mendoza preserved the status quo, he would have gone to sentencing with that recommendation. But then he was found in possession of a cell phone at the Bowie County jail, in violation of jail policy and the law. ROA.543. So Mendoza lost credit for acceptance of responsibility, vaulting his total offense level from 41 to 43 and his

advisory sentencing range to life imprisonment. ROA.529, 543. This outcome was the result of Mendoza's own poor decision; in no way did it mean that Mendoza's guilty plea was not knowing and voluntary at the time he entered it.

Mendoza argues that the Second Circuit's decision in *United States v. Johnson*, 850 F.3d 515 (2d Cir. 2017) is "instructive" and that "[t]he only difference" between Johnson's situation and his own is that "Mendoza's was more egregious." Mendoza Br. 18-19. Mendoza neglects to mention at least two very big differences. The first is that Johnson pleaded guilty without a plea agreement to a drug count under 21 U.S.C. § 841(b)(1)(A) that, because of an applicable sentencing enhancement under 21 U.S.C. § 851, carried a *mandatory* (statutory) sentence of life imprisonment. *Johnson*, 850 F.3d at 522-23. In *Johnson*, the sentencing guidelines simply had "no effect as a result of the mandatory sentence." *Id.* at 521. The Second Circuit faulted the district court for failing to make clear to Johnson before he entered his plea that the consequence of pleading guilty was a certain life sentence. *Id.* at 523.

Mendoza, in contrast, was not subject to a mandatory life sentence. He accuses the magistrate judge who handled the change-of-plea hearing as well as the prosecutor of "misleading" him about the full range of penalties and the possible consequences of his guilty

plea. Mendoza Br. 17-19. Mendoza was not misled. At that time no one knew, or could know, for certain what Mendoza's total offense level or criminal history category would be. That's why Mendoza affirmed at his change-of-plea hearing that any estimate that anyone had given him about his guidelines range was only an estimate. ROA.145. Moreover, whatever the range turned out to be, it was not binding on the district court, *United States v. Booker*, 543 U.S. 220 (2005), as Mendoza had also affirmed. ROA.144. The district court could have imposed any sentence between 10 years and life imprisonment under 21 U.S.C. § 841(b)(1)(A). And in fact, the district court *varied downward* from the guidelines sentence of life to 420 months, largely based on the mitigation arguments raised by Mendoza's attorney. ROA.302. Had Mendoza gone to trial and been convicted on all three counts, one of which was a firearm charge under 18 U.S.C. § 924(c) that was dismissed (along with a heroin-conspiracy count) under the plea agreement, he almost certainly would have received a stiffer sentence than 420 months.

   *Johnson* is also different from Mendoza's situation because Johnson had filed a motion to withdraw his plea in the district court and had thus preserved his claim on appeal. *Johnson*, 850 F.3d at 517-18. Mendoza did not, which means that he must satisfy all four

prongs of the plain-error test. *See United States v. Andaverde-Tinoco*, 741 F.3d 509, 523 (5th Cir. 2013). He has satisfied none.

### Issue II. The Court should decline to consider Mendoza's ineffective-assistance-of-counsel claim, raised for the first time on appeal, or, alternatively, reject it on plain-error review (Responsive to Mendoza Issue 1).

Mendoza argues that his trial attorney, Christopher Mulder, rendered ineffective assistance "in failing to object to Mendoza not being granted an acceptance of responsibility reduction[.]" Mendoza Br. 5. He did not raise such a claim in the district court. In fact, there he affirmed under oath that he was fully satisfied with Mulder's advice and that he had discussed every single paragraph of his plea agreement with Mulder before he signed it. ROA.139, 145-46. This Court has repeatedly said that an ineffective-assistance-of-counsel claim "cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegation." *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009) (quotation marks and citations omitted).

The preferred way to raise an ineffective-assistance claim is in a collateral proceeding under 28 U.S.C. § 2255, and that route remains open to Mendoza. *See Massaro v. United States*, 538 U.S. 500, 504-06 (2003). Indeed, "[i]t is hard to understand why a defendant would"

ever want to raise an ineffective-assistance claim on direct appeal
given that the claim would have a "trifling prospect of success,"
where, as here, the record is scant and review would be for plain
error. *United States v. Flores*, 739 F.3d 337, 340-42 (7th Cir. 2014)
(listing all the reasons it is "imprudent" and "foolish" for a defendant
to raise an ineffective-assistance claim on direct appeal). Because
Mendoza failed to raise an ineffective-assistance claim below, this
Court should not consider the claim now.

But if it does, the Court should reject the claim on plain-error
review. Mendoza contends that his trial attorney's performance was
ineffective because, according to Mendoza, Mulder not only "did not
object to Mendoza being denied acceptance of responsibility" but
actually "concurred with it." Mendoza Br. 8. That is not a fair
characterization of Mulder's conduct. Mendoza's acceptance of
responsibility turned on whether he possessed a cell phone in jail
while awaiting sentencing in this case. At sentencing, the government
presented two witnesses on the subject, both of whom testified that
jail officials had found a cell phone in Mendoza's bunk between the
mattress and the sheets. ROA.230-32, 274-82. Mendoza was lying on
top of the bed at the time. The phone was underneath him. ROA.274-
76. There was also testimony that a grand jury had returned an

indictment charging Mendoza with a criminal offense for his possession of the phone. ROA.230.

Mendoza points out that there were 23 other inmates in his pod; that four cell phones in total were found; that "Mendoza was not the individual posting the pictures"; and that "Mendoza denied knowledge of the phone." Mendoza Br. 10. But Mulder made all of those points at sentencing through his cross-examination of the government's witnesses, as Mendoza knows because he cites Mulder's cross-examination as support for his argument. Mendoza Br. 10 (citing ROA.277-81). In any event, the judge was not persuaded, likely because there was no escaping that the cell phone was found under Mendoza's bunk. Mendoza offered (and still offers) no reason why the phone was there.

Mendoza criticizes Mulder for saying during his sentencing argument that "taking away [Mendoza's] acceptance of responsibility [] is understandable, *if* you believe that the cell phone found in his tank belonged to him at the Bowie County jail." Mendoza Br. 8 (quoting ROA.296) (emphasis added). This was not ineffectiveness but reality. The award of acceptance of responsibility indisputably turned on the sentencing court's factual determination of whether Mendoza possessed the phone. Mendoza acknowledges that the sentencing court denied acceptance of responsibility "[b]ased on" the evidence the

government presented at sentencing. Mendoza Br. 8. That evidence was compelling; the phone was hidden in Mendoza's bunk. Mendoza points to no evidence or argument that Mulder could or should have presented but didn't. So Mendoza has failed to demonstrate that Mulder was constitutionally ineffective, let alone plainly so. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Nor has he demonstrated prejudice — that but for Mulder's alleged ineffectiveness, the outcome would have been different. *Id.* at 694. Again, Mendoza points to no evidence or argument that would have changed the outcome. Moreover, as Mendoza admits, Mendoza Br. 13-14, in light of the determinations the court made at sentencing on contested adjustments under the guidelines, whether Mendoza received credit for acceptance of responsibility would have made no difference to his guidelines range — it would have remained at life.

Mendoza actually has Mulder to thank for why the district court did not sentence him to life. Mulder forcefully argued for a downward variance, both in a sentencing memorandum and at sentencing, based on Mendoza's age (23) and the disparity that would result from a life sentence. ROA.295-97. The district court cited those reasons to justify the downward variance. ROA.302.

## Conclusion

The Court should affirm Mendoza's conviction and sentence.

Respectfully submitted,

Joseph D. Brown
United States Attorney
Eastern District of Texas

/s/ *Bradley Visosky*
Bradley Visosky
Assistant U.S. Attorney
101 E. Park Blvd., Suite 500
Plano, Texas 75074
Telephone: (972) 509-1201
Attorneys for the United States

## Certificate of Service

I certify that on February 20, 2020, a copy of this brief was electronically served on counsel for the appellants through use of the Court's ECF system.

/s/ *Bradley Visosky*
Bradley Visosky

## Certificate of Compliance

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 3,769 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It was prepared using Microsoft Word 2016 in a proportionally spaced typeface in 14-point size, with footnotes in 12-point size.

/s/ *Bradley Visosky*
Bradley Visosky

## Certificate Related to Fifth Circuit Rule 25.2

I certify under Fifth Circuit Rule 25.2 that: (1) all required privacy redactions have been made from this document; (2) this electronically submitted document is an exact copy of the paper document; and (3) this document has been scanned for viruses with the most recent version of commercially available virus scanning software and is free of viruses.

/s/ *Bradley Visosky*
Bradley Visosky